**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **CASE NO. 1:12 CV 3041** |
| | ) | |
| Plaintiff, | ) | **JUDGE DAN AARON POLSTER** |
| | ) | |
| vs. | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| **NATHANIEL HAWTHORNE, et al.,** | ) | |
| | ) | |
| Defendant. | ) | |

This case is before the Court on the United States' Motion for Summary Judgment (**Doc #: 25** ("Motion") and Nathaniel Hawthorne's cross-motion for summary judgment (Doc #: 28) ("Cross-Motion"). On December 13, 2013, the United States brought this action against Nathaniel Hawthorne and his wife, Sylvia, to reduce to judgment the federal income tax assessments against Nathaniel and to foreclose tax liens associated with real property known as 165 Snowshoe Trail, Chagrin Falls, Ohio ("the Snowshoe property"). For the following reasons, the Motion is **GRANTED** and the Cross-Motion is **DENIED**, and the Court exercises its discretion to enforce the foreclosure of the Snowshoe property.

**I.**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate if the moving party shows that there is no genuine dispute of material fact. Fed. R. Civ. Pro. 56(a). In considering a summary judgment motion, the Court must construe the evidence in favor of the non-moving party. *Muncie Power Prod., Inc. v. United Tech Auto Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 587 (1986)). However, the court is not "obligated to wade through and search the entire record for some specific facts that might support the non-moving party's claims." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). If, after reviewing the record as a whole, a rational factfinder could not find for the nonmoving party, summary judgment is appropriate since there is no genuine issue of material fact for determination at trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**II.**

The following material allegations are undisputed. Mr. Hawthorne self-reported tax liabilities for tax years 2002 and 2006 through 2011 ("subject tax years"), but did not pay the full amounts owed. The following chart shows the amounts of unpaid federal income taxes, penalties and interest due as of October 18, 2012, and the dates Mr. Hawthorne was given notice and demand for payment.

| Type of Tax | Tax Period | Assessment Due | Amount Due Through (October 18, 2013) |
|---|---|---|---|
| 1040 | 2002 | 06/23/2003 | $344,808.66 |
| 1040 | 2006 | 11/19/2007 | $7,035.51 |
| 1040 | 2007 | 11/10/2008 | $6,555.34 |
| 1040 | 2008 | 11/23/2009 | $11,025.24 |
| 1040 | 2009 | 2/14/2011 | $53,478.86 |
| 1040 | 2010 | 2/13/2012 | $67,564.57 |
| | | | |
| | | TOTAL: | $490,468.18 |

The Government recorded notice of its tax liens securing the above liabilities in the real property records of Geauga County, Ohio, on or about November 17, 2003, February 14, 2008,

January 26, 2009, March 8, 2010, June 13, 2011, and June 4, 2012. The Government also filed notices of tax liens against Sylvia Hawthorne on May 7, 2004 and September 28, 2012 for the same tax periods as nominee, transferee, fraudulent conveyee, and/or alter ego of Nathaniel Hawthorne. As the chart shows, Nathaniel Hawthorne owed the Government $490,468.18 as of October 18, 2012, along with all interest and statutory additions that accrued from October 18, 2012 until his tax liabilities were paid.

In 1998, Wan Yin Jung conveyed the Snowshoe property to Nathaniel and Sylvia Hawthorne, as survivorship tenants – meaning that the Hawthornes each owned a fifty percent interest in the Snowshoe property under O.R.C. § 5320.20. *See, e.g., Paternoster v. United States*, 640 F.Supp.2d 983, 990 (S.D. Ohio 2009). As the chart shows, Mr. Hawthorne received his first notice and demand for tax payment on June 23, 2003. On July 15, 2003, however, he transferred title to his interest in the Snowshoe Property to his spouse, Sylvia. It is undisputed that Mr. Hawthorne continues to reside on this property today.[1]

Based on these allegations, the Government filed the instant action on December 13, 2012, seeking judgment in its favor for the outstanding tax liabilities, asserting that it has a valid and subsisting federal tax lien on all property and rights to property belonging to Nathaniel Hawthorne, and seeking to foreclose on his interest in the Snowshoe property. (Doc #: 1.)

The Court held a Case Management Conference on May 22, 2013, after which the Court issued a Case Management Plan with a discovery deadline of January 17, 2101 and a

---

[1]The only dispute between the parties is whether Nathaniel Hawthorne transferred his interest in the Snowshoe property to hinder the collection efforts of the IRS (the Government's position) or for some other reason (the Hawthornes' position). As will be shown below, the answer to this fact question is immaterial based on uncontroverted case law.

-3-

dispositive motion deadline of March 18, 2014. (Doc #: 19.) On June 10, 2013, the Government filed a First Amended Complaint to add the income tax liabilities for the 2011 tax year recently assessed to the amounts asserted due and owing in the original complaint. (Doc #: 20.) The assessment for 2011 was $23,247.15, bringing the amount due through May 20, 2013 $518,362.15. (Id.)

On March 6, 2014, Nathaniel and Sylvia Hawthorne filed an unopposed motion for a 30-day extension of the deadlines set forth in the Case Management Plan so that they could complete the process of putting together a formal settlement offer to present to the Government. (Doc #: 24.) The Court granted the motion.

On April 17, 2014, the Government filed the pending Motion for Summary Judgment. (Doc #: 25.) The Hawthornes filed a response and an untimely Cross-Motion for Summary Judgment (Doc #: 28). The Government filed a reply in support of its Motion and an opposition to the Cross-Motion. (Doc #: 29). The Hawthornes have not filed a reply in support of their Cross-Motion.

### III.

An assessment of tax by the IRS is presumptively correct. *Affiliated Foods, Inc. v. Commissioner*, 154 F.3d 527, 530 (5th Cir. 1998); *U.S. v. Brandt*, No. 1:12 cv 1132, 2014 WL 1266849, at *2 (S.D. Ohio Mar. 26, 2014) (citing *Sinder v. United States*, 655 F.2d 729, 731 (6th Cir. 1981)). In order to overcome the presumption of correctness, the taxpayer bears the burden of proving by a preponderance of the evidence that, in fact, the assessment is incorrect. *Kinnie v. United States*, 994 F.2d 279, 283 (6th Cir. 1993). Here, however, the tax liabilities are undisputed as Mr. Hawthorne reported the tax liabilities himself. It is also undisputed that, if

tax liabilities are not paid on or before the statutory date for payment, interest accrues on the underpayment from the due date until paid; and interest accrues with respect to any additions to the tax. Respectively, 26 U.S.C. §§ 6601(a), 6601(e)(2).

26 U.S.C. § 6321 provides that, after assessment, notice and demand, a lien arises in favor of the United States in the amount of the assessment. This statutory lien attaches to all property and rights to property of the taxpayer on the date of the assessment and continues until the liability for the amount assessed is satisfied. 26 U.S.C. § 6322. The Supreme Court has held that § 6321 is broad in scope and applies to every interest the taxpayer has in property. *United States v. National Bank of Commerce*, 472 U.S. 713, 719-20 (1985).

The first assessment against Mr. Hawthorne for the amount owed for the 2002 tax year occurred on June 23, 2003. Pursuant to §§ 6321 and 6322, a statutory lien attached to all property and rights to property owned by Mr. Hawthorne on that date. Among the property owned by Mr. Hawthorne on June 23, 2003 was his one-half interest in the Snowshoe property.

Federal law determines the relative priority of federal tax liens and any competing liens. *Aquilino v. United States*, 363 U.S. 509, 513-14 (1960). In the absence of statutory authority to the contrary, "priority for the purposes of federal law is governed by the common-law principle that 'first in time is the first in right.'" *United States v. McDermott*, 507 U.S. 447, 449 (1993). The statutory lien against Nathaniel Hawthorne attached to the Snowshoe property on June 23, 2003. Therefore, any transfer of Nathaniel Hawthorne's property to his wife after that date was subject to the prior federal tax lien. Because Nathaniel Hawthorne transferred title to his interest in the Snowshoe property three weeks after the assessment, that transfer "passe[d] *cum onere*, or with the lien attached." *United States v. Bess*, 357 U.S. 51, 57 (1958). And there is

no evidence, let alone assertion, that Sylvia meets any of the narrowly limited exceptions set forth in § 6323 to federal tax lien priority.

Mr. Hawthorne, a lawyer, does not dispute this fundamental tax law. Rather, he relies on a self-serving affidavit that outlines a history of marital discord completely irrelevant to these proceedings and contends simply that the Government must prove that he intended to defraud the IRS. Even if there was no intent to defraud the IRS, it does not change the undisputed fact that the unpaid taxes were assessed and demand was made for them in June 2003 – one month prior to the transfer made to Sylvia – and that any transfer of his property to Sylvia after that date was subject to the prior federal tax lien. *Bess*, 357 U.S. at 57; *United States v. Cache Valley Bank*, 866 F.2d 1242, 1245 (10th Cir. 1989).

In any event, the undisputed facts paint a compelling picture of fraud. They show that Mr. Hawthorne (who, again, is a lawyer) transferred his interest in the Snowshoe property to his wife after he knew that he owed the IRS over $340,000 (having reported the amount owed and paying only part of that amount) and after the IRS sent him notice and demand for that amount; the transfer was made to a family member; there is no evidence that his wife gave him any consideration for this transfer of interest; and Mr. Hawthorne continues to reside on that property today – eleven years after transferring his interest to his wife. *See Cardiovascular & Thoracic Surgery, Inc. v. DiMazzio*, 37 Ohio App.3d 162 (Ohio Ct. App. 1987) (identifying badges or indicia of fraud and explaining that these are circumstances from which courts can presume that a transaction is fraudulent). Furthermore, the evidence shows that, in the same month he transferred his interest in the Snowshoe property to Sylvia, Nathaniel Hawthorne began transferring money to Sylvia's business account (which money she used to open an

account at First Third Bank and considered her personal money to be used as she wished) and to her account at Key Bank (which money she used to pay household expenses). In 2006, Sylvia Hawthorne unsuccessfully sued the Government for wrongful levy of those two bank accounts. *See Sylvia Hawthorne v. United States*, No. 1:06 CV 1590, Doc #: 32 (N.D. Ohio Sep. 10, 2007). There, she argued that because the money was placed in her accounts, state law dictated that her husband no longer had an interest in the property. As Magistrate Judge Hemann pointed out, however, "state law cannot trump federal tax law. If it did, delinquent taxpayers would be beyond the reach of the federal government with a stroke of the deposit slip. Such is not legally or logically the case." *Id*. at 7.

Finally, the Hawthornes argue that the Government has essentially waived its right to foreclose on Mr. Hawthorne's interest in the Snowshoe property because it failed to file a counterclaim for foreclosure in Mrs. Hawthorne's 2006 case. However, there is no law requiring the United States to file a counterclaim to pursue the collection of federal taxes. *See, e.g., Patzkowski v. United States*, 576 F.2d 134 (8th Cir. 1978) (explaining that "the Government may, of course, asserts its collection action as a counterclaim; alternatively, however, it may file a separate collection action."); *Caleshu v. United States*, 50 F.2d 711, 714 (8th Cir. 1978) (agreeing with the Government's position that "the nature and the purpose of the statutes authorizing collection suits demonstrate Congress' intent that such suits were not to be compulsory counterclaims). *Accord Arch Mineral Corp. v. Lujan*, 911 F.2d 408 (10th Cir. 1990); *Russell v. United States*, 592 F.2d 1069, 1073 (9th Cir. 1979).

In sum, based on the undisputed facts and law, the transfer of Mr. Hawthorne's interest in the Snowshoe property to Sylvia Hawthorne was subject to the prior federal tax lien. *United

*States v. Cache Valley Bank*, 866 F.2d at 1245. Accordingly, the Court grants judgment in favor of the Government and against the Hawthornes.

The next question is whether the Court should exercise its discretion to enforce the lien via foreclosure. Pursuant to 26 U.S.C. § 7403, the United States may enforce its tax liens by foreclosing upon and selling the property subject to the federal tax lien.

The Supreme Court has set forth the following factors the district court must consider when deciding whether real property, held by both a delinquent taxpayer (Mr. Hawthorne) and a third-party (Mrs. Hawthorne), should be forcibly sold by foreclosing the attached federal tax lien: (1) the economic prejudice to the United States of the sale of a partial interest in the property; (2) the third-party's legal expectations that the property will be protected from a forced sale; (3) the likely prejudice to the third-party, both in personal dislocation costs and potential undercompensation; and (4) the comparative property interests of the delinquent taxpayer and the third party. *United States v. Rodgers*, 461 U.S. 677, 710-11 (1983).

As to the first consideration, the Government contends that it would suffer economic prejudice if it were required to sell only Mr. Hawthorne's one-half interest in the Snowshoe property because no reasonable buyer would purchase an interest in a residence where the other owner currently resides. The Hawthornes have failed to respond to this position. As such, the Court finds that this factor weighs in favor of the United States.

As to the second consideration, the Government contends that Mrs. Hawthorne has no legal expectation that the Snowshoe property is protected from foreclosure to satisfy her husband's tax debt because this is the second time the Hawthornes have worked together to avoid collection by the Government, citing Mrs. Hawthorne's 2006 case. Mrs. Hawthorne

suggests that the Government has waived its right to foreclose on the Snowshoe property because she raised the question of the Snowshoe property in her 2006 case and "[w]hen the lawyer taking my deposition raised the issue of my ownership of the house, I recall the Judge said that [ ] she was not going to talk about the house." (S. Hawthorne Aff. ¶¶ 1-2.)  The Sixth Circuit has recognized, however, that property transfers "specifically contemplated to frustrate the United States' tax collection efforts" eliminate the weight normally given to the second *Rodgers* factor.  *United States v. Barr*, 617F.3d 370, 375-76 (6th Cir. 2010).  Thus, the Court finds that this factor also weighs in favor of the Government.

As to the third consideration, if the Court orders foreclosure, there is no doubt that Mrs. Hawthorne will suffer some prejudice through being required to vacate her residence and find alternative housing.  However, the Sixth Circuit has held that the "hardship of having to leave a home with enormous sentimental value" is insufficient to weigh against foreclosure of the entire property.  *United States v. Winsper*, 680 F.3d 482, 492 (6th Cir. 2012).  The question is whether Mrs. Hawthorne's personal dislocation costs would be greater than in any other foreclosure action against a residence, and whether there might be the potential for under-compensation for the property interest.  *United States v. Bierbrauer*, 936 F.2d 373, 375-76 (8th Cir. 1991).  If "the inherent indignity and inequity of being removed from one's home" alone were sufficient to "tip the scales in favor of the non-liable third party, then the government could never foreclose against a jointly owned residence – a result clearly untenable under § 7403." *Id*. at 376.  The Government asserts that Mrs. Hawthorne will receive 50% of the net proceeds from the sale of the residence, which amount will provide her with a sum to relocate and pay for alternative housing without sacrificing the Government's interest in collecting on the tax liabilities of Mr. Hawthorne (who continues to live in the home despite the enormous

tax debt he owes to the IRS).  Because neither of the Hawthornes have addressed this particular consideration, the Court concludes that the Government's legitimate interest in collecting Mr. Hawthorne's debt dwarfs the prejudice to Sylvia Hawthorne from a forced sale.  Thus, the Court finds that this factor weighs in favor of the United States.

As to the fourth consideration, the Government asserts that Mr. and Mrs. Hawthorne each have a 50% interest in the Snowshoe property.  No matter how you look at it – whether Mr. Hawthorne failed to lawfully convey his 50% interest to his wife in July 2003, or whether the interest he conveyed was subject to a prior federal tax lien – Sylvia Hawthorne retains her 50% interest in the property.  The Court finds that this factor is neutral.

Because the *Rodgers* factors weigh heavily in favor of the Government, and because the Court has given the Hawthornes plenty of time to resolve this matter without through some vehicle other than foreclosure, the Court hereby exercises it discretion to enforce the sale of the Snowshoe property.

**IV.**

Based on the foregoing, the Court **GRANTS** the United States' Motion for Summary Judgment (**Doc #: 25**) and **DENIES** the Hawthornes' Cross-Motion for Summary Judgment (**Doc #: 28**); reduces to judgment the federal income tax liabilities of Nathaniel Hawthorne for the income tax years 2002 and 2006 through 2011; concludes that the federal tax lien for the 2002 income tax year attached to the Snowshoe property; and orders foreclosure of that property to satisfy the lien.

**IT IS SO ORDERED.**

                                           */s/ Dan A. Polster     May 28, 2014*
                                           **Dan Aaron Polster**
                                           **United States District Judge**